**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| UNITED STATES<br><br>v.<br><br>SCOTT WOLAS | No.  17-cr-10198-FDS |

**RESPONSE TO GOVERNMENT'S MEMORANDUM CONCERNING FORFEITURE**

Third-Party Petitioner, Cecily Sturge, respectfully submits this Response to the Memorandum of the United States Regarding Ancillary Forfeiture Proceedings ("Gov. Mem.") [DE 105].[1]

The government's principal argument is that "Wolas's and Sturge's efforts to have the Retirement Account transferred to Sturge should be set aside as a fraudulent transfer under Florida law."  Gov Mem. at 14.  This argument lacks merit for at least two reasons.  First, the QDRO cannot constitute a fraudulent transfer under Florida law because the government had no claim against Wolas' untainted assets at the time the Florida court issued the QDRO.  Second, the unequal distribution of the martial asset – the Retirement Account – was fully justified under Florida divorce law, and Sturge would have been entitled to all those untainted funds even if Wolas had not drafted or assented to the QDRO.

---

[1] Ms. Sturge also intends to file an Opposition to the government's Application for Writ of Garnishment. [DE 106]   There is no urgency to the issuance of such a writ because the Retirement Account is already restrained by this Court's Preliminary Order of Forfeiture and the separate restraining order issued by Judge Zobel.  Moreover, a writ of garnishment can only issue "against property . . . in which the debtor has a substantial nonexempt interest."  28 U.S.C. § 3205(a).  Whether Wolas still has any interest in the Retirement Account and the extent of any such interest are precisely the questions that the ancillary proceeding will answer.

I.      **The QDRO Cannot Be A Fraudulent Transfer Because the Government Had No Claim to Wolas' Untainted Assets at the Time it Was Entered.**

As the cases cited by the government acknowledge, "[f]or purposes of a fraudulent conveyance action" under Fla. Stat. § 726.01, "a creditor must have at least one claim in existence when the transfers were made." *Harper v. United States*, 769 F. Supp. 362, 366 (M.D. Fla. 1991) (citing *Whetstone v. Coslick*, 117 Fla. 203, 207 (1934)) (Gov. Mem. at 16-17).  In *Harper*, the "United States was a creditor with standing to institute a fraudulent conveyance action since the assessments made against [defendant] relate back to the tax years from which the liability arose," which predated the transfers at issue.  *Id.*; *see also United States v. Kirtland*, 2011 U.S. Dist LEXIS 92019 (D. Kan. Aug. 16, 2011) (Gov. Mem. at 17) (denying motion to set aside restraining order where divorce settlement made *after* defendant's guilty plea and entry of a forfeiture judgment was alleged to be a fraudulent transfer).

Here, as Ms Sturge explained in her opening Memorandum ("Mem.") [DE 107], the government had no claim against Wolas' untainted assets until his conviction on June 29, 2018 — more than a year after entry of the QDRO.  There is no dispute concerning this critical material fact.  Accordingly, the QDRO cannot qualify as a fraudulent transfer.  The government's reliance on *United States v. Gallion*, 2010 U.S. Dist. LEXIS 94786 (E.D. Ky. Sept. 10, 2010) (Gov. Mem. at 15) to apply "relation back" principles to a putative fraudulent transfer of substitute assets is misplaced.  *Gallion* relied on the now-overruled Fourth Circuit cases that erroneously applied the "relation-back" doctrine to substitute assets.  *See Gallion,* 2010 U.S. Dist. LEXIS 94786 at *39-40 (citing *United States v. McHan*, 345 F.3d 262, 272 (4th Cir. 2003)).  As Ms. Sturge previously noted, Mem. at 9, the Fourth Circuit has now joined every other circuit to have addressed the issue in ruling that, as a matter of federal forfeiture law, the "relation back" doctrine does not apply to substitute assets.

There can be no dispute that 1) the Retirement Account is an untainted asset; 2) the government had no claim to the Retirement Account as a substitute asset until Wolas pleaded guilty; and 3) "relation back" principles do not apply to substitute assets.  Thus, as a matter of undisputed facts and applicable federal forfeiture law, the government cannot forfeit the Retirement Account

## II.      Distribution of the Entire Retirement Account to Ms. Sturge Was Justified Under Florida Divorce Law.

Even assuming, *arguendo*, that the QDRO is subject to scrutiny under the Florida fraudulent transfer statute notwithstanding the timing issue explained above, the government cannot forfeit the Retirement Account because distribution of that entire asset to Ms. Sturge was justified under Florida divorce law.  Notably, this is not a situation where Wolas gratuitously transferred cash, real estate, or other assets that he owned to Ms. Sturge.  *Contrast United States v. Coffman*, 997 F. Supp. 2d 677 (E.D.  Ky. 2014) (defendant made various transfers to wife during marriage, including tainted assets) (Gov. Mem. at 15); *Harper*, 769 F. Supp. at 364-365 (defendant made various transfers to wife separate from divorce proceedings) (Gov. Mem. at 16-17).  Rather, Wolas assented to a modification of the 2001 divorce decree to include a QDRO that awarded the entirety of an untainted *marital asset* – the Retirement Account – to Ms. Sturge.  That QDRO would have been appropriate and could have been obtained even without Wolas' assent.  At a minimum, under Florida law, Ms. Sturge was presumptively entitled to half of the Retirement Account when she and Wolas divorced.  And the relevant factors enumerated in the Florida divorce statute further justified unequal distribution of the entire marital asset to her.

"A court overseeing a Florida marriage dissolution proceeding is obligated to operate under the premise that marital properties and liabilities should be distributed equally absent some justification for an unequal distribution." *In Cross v. Lankry*, 263 B.R. 638, 643 (M.D. Fla.

2001) (citing Fla. Stat. § 61.075 Equitable distribution of marital assets and liabilities).  "[A]

spouse's creditors may attack a distribution as a fraudulent transfer should it turn out to be

*unjustifiably* unequal."  *Id*. (emphasis added).  Applying the Florida fraudulent transfer statute,

Fla. Stat. § 726,  the court in *Lankry* held that, "in order to establish that a separation agreement

fraudulently transferred non-entireties properties acquired during a marriage," a  creditor "must

satisfy a three-prong test by a preponderance."  *Id*. at 644.

> First, a [creditor] must prove that a property . . . in question was in fact a "marital
> property" under Florida law.

> Second, a [creditor] must also prove that a distribution of a marital property . . .
> was in fact unequal, to the detriment of the creditors of the spouse surrendering a
> disproportionate share of marital assets . . .

> Finally, a [creditor] attacking an unequal distribution as fraudulent must also
> show that a departure from equitable distribution was not justified by *any* of the
> factors recognized as relevant to a distribution determination under Florida law.

*Id*. (emphasis added).

Here, the government's fraudulent transfer argument falters on the third prong.  Under

Florida law, any of the following factors can justify unequal distribution of marital assets:

> (a)   The contribution to the marriage by each spouse, including contributions to
> the care and education of the children and services as homemaker.
> (b)   The economic circumstances of the parties.
> (c)   The duration of the marriage.
> (d)   Any interruption of personal careers or educational opportunities of either
> party.
> (e)   The contribution of one spouse to the personal career or educational
> opportunity of the other spouse.
> (f)   The desirability of retaining any asset, including an interest in a business,
> corporation, or professional practice, intact and free from any claim or
> interference by the other party.
> (g)   The contribution of each spouse to the acquisition, enhancement, and
> production of income or the improvement of, or the incurring of liabilities to, both
> the marital assets and the nonmarital assets of the parties.
> (h)   The desirability of retaining the marital home as a residence for any
> dependent child of the marriage, or any other party, when it would be equitable to
> do so, it is in the best interest of the child or that party, and it is financially

feasible for the parties to maintain the residence until the child is emancipated or until exclusive possession is otherwise terminated by a court of competent jurisdiction. In making this determination, the court shall first determine if it would be in the best interest of the dependent child to remain in the marital home; and, if not, whether other equities would be served by giving any other party exclusive use and possession of the marital home.

(i)    The intentional dissipation, waste, depletion, or destruction of marital assets after the filing of the petition or within 2 years prior to the filing of the petition.

(j)    Any other factors necessary to do equity and justice between the parties.

Fla. Stat. § 61.075(1).  Individually and collectively, these factors militate in favor of awarding the entire Retirement Account to Ms. Sturge in the circumstances presented here.   The government does not dispute that Wolas abandoned Ms. Sturge and their son, leaving them without financial support and saddled with debt until the marriage was dissolved by default judgment after 19 years.  All the while, Wolas continued to dissipate and destroy other marital assets.

Even if this Court were to find that unequal distribution of the Retirement Account was unwarranted, that would still leave Ms. Sturge with her presumptive half-interest of the untainted marital asset, vested as of the divorce in 2001, that could not constitute a fraudulent transfer and that the government therefore may not forfeit as a substitute asset.

## Conclusion

For the foregoing reasons, as well as those set forth in her initial Memorandum, the Court should grant Ms. Sturge's petition and permit the Retirement Account to be distributed to her.

Respectfully submitted,

CECILY STURGE
by her attorneys,

*/s/  William W. Fick*
Daniel N. Marx, Esq. (BBO #674523)
William W. Fick, Esq. (BBO #650562)
FICK & MARX LLP
24 Federal Street, 4th Floor
Boston, MA 02110
857-321-8360
dmarx@fickmarx.com
wfick@fickmarx.com

## CERTIFICATE OF SERVICE

I, William W. Fick, certify that on May 20, 2019, this Petition filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ William W. Fick*